IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DALE CORPORATION | : | CIVIL ACTION |
| | : | NO. 09-1115 |
| v. | : | |
| | : | |
| CUMBERLAND MUTUAL FIRE | : | |
| INSURANCE COMPANY | : | |

O'NEILL, J.                                                                  NOVEMBER 30, 2010

## MEMORANDUM

Plaintiff Dale Corporation filed this declaratory judgment action against defendant Cumberland Mutual Fire Insurance Company with respect to two underlying suits filed by Robert Francis in the Philadelphia County Court of Common Pleas. Dale seeks declarations that under an insurance policy issued by Cumberland to Nesmith & Company, Inc., Cumberland had a duty to defend and an obligation to indemnify Dale for settlement and defense costs incurred by Dale as a result of the underlying Francis suits. Both parties have moved for summary judgment and their motions have been fully briefed.[1] For the reasons that follow, I conclude that Cumberland had neither a duty to defend nor a duty to indemnify Dale.[2]

---

[1] Presently before me are: Cumberland's motion for summary judgment (Doc. No. 23); Dale's Response (Doc. No. 28); Cumberland's reply (Doc. No. 30); Dale's sur-reply (Doc. No. 33); Dale's motion for summary judgment (Doc. No. 25); Cumberland's Response (Doc. No. 29); Dale's reply (Doc. No. 31); Dale's supplemental brief (Doc. No. 37) and Cumberland's supplemental brief (Doc. No. 38).

[2] In my June 30, 2010 Opinion on this question, I found that Cumberland had a duty to defend Dale. See Opinion at 17 (June 30, 2010) (Doc. No. 35). My conclusion was based solely on the fact that the complaint Francis filed in his second lawsuit contained allegations that Nesmith caused Francis's injury. See id. at 14. I reserved ruling on when Cumberland's duty to defend was triggered, however, and requested that the parties submit additional briefing on that issue. With the benefit of the additional briefing, I now conclude that Cumberland had neither a duty to defend nor a duty to indemnify Dale. I thus vacate my June 30, 2010 Order in its entirety.

## BACKGROUND

Dale was hired by Westrum Development Company as a construction manager for the Brewerytown construction project at the intersection of 31st and Thompson Streets in Philadelphia. Dale retained Nesmith as a subcontractor to perform construction services and provide related materials. Dale also retained Chisom Electrical Contractors, Inc. to install an electrical cable for security lighting at the construction site.

The Dale/Nesmith subcontract required Nesmith to add Dale as an additional insured on Nesmith's Comprehensive General Liability Insurance policy. Nesmith obtained an insurance policy from Cumberland for the period of May 1, 2005 to May 1, 2006 with a limit of $1,000,000 for each occurrence and a $2,000,000 general aggregate limit. The policy provides coverage for an additional insured which is defined as:

> any person or organization for whom you [Nesmith] are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> 1. Your [Nesmith's] acts or omissions; or
> 2. The acts or omissions of those acting on your [Nesmith's] behalf;
>
> in the performance of your [Nesmith's] ongoing operations for the additional insured.
>
> A person's or organization's status as an additional insured under this endorsement ends when your [Nesmith's] operations for that additional insured are completed.

An additional insured is entitled to certain coverage under the policy. Specifically, "[Cumberland] will pay those sums that the [additional] insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Cumberland] will have the right and duty to defend the [additional] insured against any 'suit' seeking those damages."

Along with the additional insured provision, the Dale/Nesmith subcontract also required Nesmith to defend and indemnify Dale from claims "arising out of or resulting from performance of [Nesmith]'s Work under this Subcontract, provided that any such claim, damage, loss or expense is attributable to bodily injury . . . but only to the extent caused by the negligent acts or omissions of [Nesmith] . . . or anyone for whose acts they may be liable." The subcontract required Nesmith to "take reasonable safety precautions with respect to performance" of the subcontract.

Nesmith rented a Genie lift and brought it to the construction site solely for its use in performing its duties on the site. John Russell, Nesmith's foreman for the carpenters at the site, testified that the Genie lift at that site "was solely for Nesmith" and that other than he and the carpenters no other trade used the lift. Joint Stip. Ex. O at 21-22 (Doc. No. 24) (Russell Dep.).

On June 21, 2005, however, Robert Francis, who was employed as an electrician by Chisom Electrical, was operating the Genie lift at the construction site under the supervision of his foreman, Alton Ming. Francis and Ming were using the lift to hang temporary electrical lines on three PECO power poles. The lift was used by Francis and Ming without Nesmith's permission or knowledge. While Ming was using the lift to install the third eye bolt on the

3

power pole, Francis sustained a high-voltage electrical shock as a result of working in close proximity to an uninsulated energized overhead power line. He suffered severe burns.

Subsequently, Francis filed two lawsuits in the Philadelphia County Court of Common Pleas. The first suit, filed August 29, 2006, named Dale, among others, as a defendant. On April 17, 2007, Dale filed a joinder complaint against Nesmith seeking common law contribution, common law indemnification, contractual indemnification, counsel fees, costs and insurance coverage. Thereafter, on June 20, 2007, Francis filed a second suit naming Nesmith, among others, as a defendant. In the second suit, Francis levied a charge of negligence against Nesmith alone averring that Nesmith failed to secure the lift and keys and take other reasonable precautions which would have prevented Francis's injuries. On September 27, 2007, the two suits were consolidated "for purposes of discovery and trial."

The parties attempted to mediate the dispute. The first mediation took place on October 16, 2008 and did not result in a settlement. On October 31, 2008 and November 4, 2008, Dale tendered its defense in the underlying litigation to Nesmith and Cumberland. Cumberland denied the request on November 11, 2008. Subsequently, a second mediation took place on March 17, 2009. Nesmith offered $10,000 towards Francis's initial $7 million demand. The underlying litigation ultimately settled for $2 million. Neither Cumberland nor Nesmith contributed any sum towards the $2 million settlement amount.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255.

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the moving party. Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Dale moves for summary judgment seeking declarations that: 1) it is an additional insured under the Nesmith insurance policy; 2) its settlement in the underlying litigation was reasonable;

3) Cumberland had a duty to defend Dale in the underlying litigation; 4) Cumberland had a duty to indemnify Dale with respect to the underlying litigation; and 5) Dale is entitled to be reimbursed for settlement costs and defense costs incurred by or on behalf of Dale in the underlying litigation. Conversely, Cumberland moves for summary judgment seeking a declaration that it owed no duty to defend or indemnify Dale. I will address each question in turn.

I.  Dale Was An Additional Insured Under the Policy

Cumberland does not dispute that Dale was an additional insured under the insurance policy. I will therefore grant as unopposed Dale's motion seeking a declaration that it was an "additional insured." As discussed infra, however, Cumberland disputes that its duty to defend or indemnify was triggered by the underlying litigation.

II.  Cumberland Had No Duty To Defend Dale

Under Pennsylvania law, "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010). "The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." Id.

Accordingly, "[I] must first ascertain the scope of the insurance coverage and then analyze the allegations in the complaint." Britamco Underwriters, Inc. v. Grzeskiewicz, 639 A.2d 1208, 1210 (Pa. Super. Ct. 1994) (citations and quotation marks omitted); see also Erie Insurance Exchange v. Claypoole, 673 A.2d 348, 355 (Pa. Super. Ct. 1996) (in a declaratory judgment action, "the allegations raised in the underlying complaint alone fix the insurer's duty

to defend."). "[T]he factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999). It is irrelevant whether the allegations in the complaint are meritorious; "[the duty to defend] even extends to actions that are groundless, false, or fraudulent as long as there exists the possibility that the allegations implicate coverage." Jerry's Sport Ctr., 2 A.3d at 541 (internal quotation marks omitted).

A. "Caused In Whole Or In Part By"

First, I must examine the scope of the policy language to determine what circumstances would trigger Cumberland's duty to defend Dale. The additional insured endorsement states, in relevant part, that Dale:

> is an additional insured only with respect to liability for bodily injury, property damage or personal and advertising injury caused, in whole or in part, by:
> 1. Your [Nesmith's] acts or omissions; or
> 2. The acts or omissions of those acting on your [Nesmith's] behalf
> in the performance of your [Nesmith's] ongoing operations for the additional insured.

In order to determine the scope of the policy, I must decide what it means for a bodily injury to be "caused, in whole or in part, by" Nesmith's acts or omissions.

"The interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the court.'" Minnesota Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 861 (Pa. 2004) (quoting Gen. Accident Ins. Co. of Am. v. Allen, 692 A.2d 1089, 1093 (Pa. 1997)). The court's "purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." Donegal Mut. Ins.

Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007) (citing 401 Fourth Street, Inc. v. Investors Ins. Group, 879 A.2d 166, 171 (Pa. 2005)). "[W]hen a provision in the policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy and controls coverage." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006). However, "[w]hen the language of the policy is clear and unambiguous, [I] must give effect to that language." Id. "Words of 'common usage' in an insurance policy are to be construed in their natural, plain, and ordinary sense, and a court may inform its understanding of these terms by considering their dictionary definitions." Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962 (Pa. Super. Ct. 2007).

Dale and Cumberland take different approaches to interpreting this policy language and reach opposite conclusions as to what the language means. Dale contends that "caused, in whole or in part, by" means that Nesmith's acts or omissions need only have been the "but for" cause of Francis's injuries. On the other hand, Cumberland asserts that Nesmith's acts or omissions had to be the proximate cause of his injuries in order to trigger Cumberland's duty to defend.

Dale asks me first to consult Black's Law Dictionary which defines "cause" as "to bring about or effect." Dale then suggests that "the term 'caused by' is analogous to 'the result of' and 'arising out of' phrases in that it simply implies that an activity or omission brings about a result but does not rise to the level of proximate cause." Pl.'s Br. at 10 (Doc. No. 25) (analogizing to Maryland Cas. Co. v. Regis Ins. Co., Civ. A. No. 96-790, 1997 U.S. Dist. LEXIS 4359 (E.D. Pa. Apr. 1, 1997) (holding that the phrase "as a result of" contained in an additional insured

provision only required a showing of "but for" causation).[3] Pennsylvania courts have uniformly held phrases like "arising out of" to require only a showing of "but for" causation. Id. at 12-13 (citing R.R. Donnelly & Sons Co. v. Fireman's Fund Ins. Co., Civ. A. No. 03-6412, 2004 U.S. Dist. LEXIS 24583 (E.D. Pa. Dec. 6, 2004); Rust Eng'g & Constr. v. J.C. Zampell Constr., Civ. A. No. 96-8706, 1997 U.S. Dist. LEXIS 19783 (E.D. Pa. Dec. 11, 1997)).

For its part, Cumberland does not dispute that "arising out of" is a broad phrase requiring only a "but for" showing. Cumberland argues, however, that "caused by" is narrower than phrases like "arising out of." Def.'s Mot. at 4 (Doc. No. 23) (citing Utica Nat'l Ins. Co. of Texas v. Am. Indem. Co., 141 S.W.3d 198, 203 (Tex. 2004) ("'[a]rising out of' are words of much broader significance than 'caused by.'")); see also Def.'s Resp. at 4 (Doc. No. 30) (citing O'Dwyer v. Manchester Ins. Co., 303 So. 2d 347, 348 (Fla. Dist. Ct. App. 1974) ("'arising out of' is not synonymous with the words 'caused by,' but is given a broader meaning in determining whether coverage applies."). Cumberland reasons that if "arising out of" requires only "but for" causation then a narrower term such as "caused by" must signify a closer causal relationship, i.e. proximate causation. Def.'s Resp. at 4-5 (Doc. No. 30) (citing Gulginiti v. Tocco, 462 F.2d 654 (3d Cir. 1972) (interpreting the term "caused by" in the Restatement (Second) of Torts § 339,

---

[3] Dale also points to cases where courts in the Third Circuit determined that narrow insurance policy language–such as "direct cause of a loss," "resulting directly from" and "direct physical loss of . . . caused by or resulting from"–required proximate cause and not "but for" causation. Id. at 10-11 (citing Jefferson Bank v. Progressive Cas. Ins. Co., 965 F.2d 1274 (3d Cir. 1992); Resolution Trust Corp. v. Fidelity & Deposit Co. of Maryland, 205 F.3d 615, 655 (3d Cir. 2000) and Cher-D, Inc. v. Great Am. Alliance Ins. Co., Civ. A. No. 05-5936, 2009 U.S. Dist. LEXIS 30206 (E.D. Pa. Apr. 7, 2009)). Dale distinguishes the present facts from these cases by noting that the policy language does not require Nesmith's acts or omissions to be a "direct" cause of bodily injury and if Cumberland so intended that result it could have written it into the policy.

9

infant trespasser rule, to require proximate causation); Cichon v. Brista Real Estate Assoc., 597 N.Y.S.2d 819, 821 (N.Y. App. Div. 1993); Edwards v. Int'l Bus. Machines Corp., 571 N.Y.S.2d 155 (N.Y. App. Div. 1991)).

The interpretation of this phrase in an additional insured endorsement seems to be an issue of first impression under Pennsylvania law. The additional insured endorsement found in the policy issued by Cumberland to Nesmith is an Insurance Services Office, Inc.[4] document, numbered CG 20 33 07 04 and copyrighted in 2004. The ISO introduced this revised version of its widely used additional insured endorsements as a response to courts' interpretations of its prior version. 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 11:167 (2010).

> The 2004 revisions (1) eliminated the 'arising out of language' from several standard endorsements; (2) substituted, in its stead, that coverage applied only to injury or damage 'caused in whole or in part' by the acts [or] omissions of the named insured; and (3) specifically excluded injury or damage arising out of the sole negligence of the additional insured.
>
> The 2004 revisions are a belated acknowledgement [sic] that the 'arising out of' language simply did not accomplish the scope of coverage intended by the industry. Many courts interpreted 'arising out of' to be a simple causation test and, therefore, afforded direct primary coverage to the additional insured. The ISO hopes that, by substituting 'caused by' for 'arising out of,' a narrower coverage interpretation will be afforded. Moreover, the revised language specifies that coverage is afforded the additional insured for liability arising out of the named insured's 'acts or omissions,' not simply the named insured's operations. Arguably, the absence of fault on behalf

---

[4] "The insurance industry operates by using standard policy forms. The provider of most of the standard forms is the Insurance Services Office, Inc. (ISO). This is an industry-supported organization. One of the primary missions of the ISO is to develop certain standard insurance policies." 4 Philip L. Bruner & Patrick J. O'Connor, Jr., Bruner and O'Connor on Construction Law § 11:6 (2010).

10

> of the named insured results in a finding of no coverage for the additional insured.

Id. (footnotes omitted); see also id. at § 11:151 (noting that the industry sought to limit coverage of additional insureds by introduction of the "caused, in whole or in part, by" language which it hoped would require "some causation on the part of the named insured to trigger coverage under the additional insured endorsement."). This history significantly undercuts Dale's argument that a simple "but for" test is what was intended when the parties chose to use the words "caused by" rather than "arising out of."

In addition to this commentary on the 2004 ISO additional insured endorsement, other courts have held that identical policy language requires a showing of proximate causation in order to trigger the duty to defend. In Am. Empire Surplus Lines Ins. Co. v. Crum & Forster Specialty Ins. Co., Civ. A. No. 06-4, 2006 WL 1441854 (S.D. Tex. May 23, 2006), the district court examined facts similar to those present here. Finger was the general contractor on a residential construction project and subcontracted with Multi Building, Inc. to perform framing work. Under the subcontract, Multi was to name Finger as an additional insured on Multi's commercial general liability insurance policy. Multi's policy was issued by defendant Crum. That policy contained virtually the same language pertaining to additional insureds as the Cumberland policy: an organization is only an additional insured "with respect to liability for 'bodily injury' . . . caused, in whole or in part, by: (1) Your [Multi's] acts or omissions; or (2) The acts or omissions of those acting on your [Multi's] behalf; in the performance of the ongoing operations for the additional insured at the location(s) designated above."

While working on the construction site, Jose Romero and Angel Martinez fell from a makeshift aerial lift consisting of a forklift outfitted with a "trash box."[5] As a result, Romero died and Martinez was injured. Romero's spouse and children filed a suit in which Martinez intervened. The first amended complaint alleged that Finger "and/or" Multi were negligent in causing Romero's death by: 1) supplying and designing an unsafe aerial lift consisting of a trash box affixed to a forklift; 2) controlling Romero's unsafe use of the makeshift aerial lift; and 3) directing Romero's work in an unsafe manner. Id. at *7 n.15. It also alleged that these acts or omissions "taken separately and/or collectively, singularly and/or cumulatively, constitute a direct and proximate cause of [Romero's] death." Id. American Empire, Finger's insurance provider, tendered its defense to Crum and Crum declined.

The court characterized the issue as whether Crum was obligated by the "whole or in part" sentence of the additional ensured endorsement to defend Finger in the underlying lawsuit. It held that the "'whole or in part' sentence focuses on whether Multi is partially or wholly responsible for the third party injuries and Finger's liability for same." Id. at *7. Furthermore, "[t]he focus of the definition of additional insured coverage in the 'whole or in part' sentence is on whether Plaintiffs allege a theory in the operative pleading in the Underlying Lawsuit under which Finger could be held liable for conduct by Multi that 'caused' injury to a third party in any way." Id. The court concluded that Crum was liable to defend Finger because the plaintiffs in the underlying lawsuit potentially alleged a claim against Finger based on some conduct by Multi. Id.

---

[5] The opinion does not identify who employed Romero or Martinez.

Similarly, in Gilbane Bldg. Co. v. Empire Steel Erectors, L.P., Civ. A. No. 08-1707, 2010 WL 707378 (S.D. Tex. Feb. 23, 2010), the court was presented with virtually the same additional insured language as in this case. There, the underlying plaintiff made no allegations in his complaint with respect to the named insured because the named insured was his employer and could not be held liable under the state workers' compensation laws.[6] Nevertheless, the court found that the additional insured was entitled to a defense under the policy because it could not "say that [the underlying plaintiff] Parr himself, acting on behalf of [the named insured] Empire Steel in the course of his job, was not possibly a contributing, proximate cause of his injuries." Id. at *10. The court noted that Parr pled that he was injured while working for Empire Steel, that the injury occurred while he was walking down a ladder with muddy boots and that these allegations "raise[d] at least an inference that Parr himself could have been partly at fault." Id.

---

[6] One commentator cautions,

> The only allegations that would fall clearly outside the coverage provisions of the new additional insured endorsements, however, would be explicit allegations of the additional insured's sole fault. In most instances, insurers should look beyond the lawsuit to determine if the insured's acts or omissions may have contributed to the bodily injury, and whether they should defend and indemnify on behalf of the additional insured. A hard-line approach on this by insurers will likely result in a new line of coverage cases in which additional insureds are attempting to prove some degree of culpability against their subcontractors to obtain coverage under the subcontractors' CGL policies.

Jack P. Gibson & Jeff Woodward, 2004 ISO Additional Insured Endorsement Revisions, ABA Forum on the Construction Industry Winter Meeting (Jan. 27, 2005). The comments arise out of a concern that an injured worker may often fail to allege any wrongdoing on the part of his employer–because workers' compensation laws shield the employer from liability in the underlying suit. As a result, the insurer in the over-action would narrowly interpret the policy so as not to require coverage.

(citation omitted). Thus, even though the complaint did not allege Empire Steel's acts or omissions, the court held that the duty to defend was triggered. Id.

This case law and the drafter's history supports my conclusion that the additional insured provision requires a showing that Nesmith's acts or omissions were a proximate cause of Francis's injuries in order to trigger the policy coverage.[7]

B. Francis's Allegations Did Not Trigger Cumberland's Duty To Defend

Having determined the scope of the additional insured provision, I must now decide whether any of Francis's complaints allege that acts or omissions by Nesmith proximately caused Francis's injury.

1. Francis's Complaint Against Dale Did not Trigger Cumberland's Duty to Defend

Dale argues that review of the allegations contained in the original complaint reveals that "a <u>potential</u> for coverage under the Cumberland policy is immediately evident." Pl.'s Br. at 4 (Doc. No. 37) (emphasis in original). It points specifically to two paragraphs in the complaint:

> 12. At the time of the accident, Plaintiff Robert Francis and Alton Ming were working from a Genie S-85 Aerial Lift (#BOLO1064).
> . . .
> 28. The joint and several negligence, carelessness and/or recklessness of the defendants, Dale Corporation, Dale Construction Company and Westrun, consisted of the following . . . . [subsection n.] Allowing use of a Genie Lift to gain access to high voltage electrical service without de-energizing the power[.]

---

[7] I predict that the Pennsylvania Supreme Court would hold likewise. See Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990) ("In cases where the state's highest court has not considered the precise question to be answered, the federal court is called upon to predict how the state court would resolve the issue should it be called upon to do so.").

14

These allegations cannot trigger defendant's duty to defend because they do not in any way implicate Nesmith, as required by the additional insured endorsement. Dale's argument to the contrary is premised on the now-undisputed fact that Nesmith procured the Genie lift. It suggests, in essence, that reference to the Genie lift in the first complaint is the functional equivalent of a direct allegation against Nesmith. In determining when Cumberland's duty to defend arose, however, I am bound to look only within the four corners of the complaint. See Donegal Mut. Ins. Co., 938 A.2d at 290-91; Kvaerner, 908 A.2d at 896-97 ("We find no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself."). Francis's first complaint contains no allegation that Nesmith procured the lift. Because the first complaint contained no allegations that Nesmith's acts or omissions were the proximate cause of Francis's injury, the first complaint did not give rise to Cumberlands's duty to defend.[8]

2.  Dale's Third Party Complaint Did Not Trigger Cumberland's Duty to Defend

Cumberland argues that the third party complaint did not trigger its duty to defend Dale because the third party complaint contained only "the allegations of the putative additional insured, not the underlying plaintiff." Def.'s Br. at 4 (Doc. No. 38) (emphasis in original). Dale did not address this argument in its brief, choosing instead to focus on its argument that the

---

[8] Even if Francis's complaint had alleged that the Genie lift had been procured by Nesmith, the two passing references to the existence of the Genie lift would likely be insufficient to establish that Nesmith's acts or omissions were the proximate cause of Francis's injury. In light of the more fundamental deficiency discussed in the text, however, I need not decide this question.

original complaint triggered Cumberland's duty to defend. Dale did not file a response to Cumberland's brief.

I find that the third party complaint did not trigger Cumberland's duty to defend Dale in the third party action itself because Dale was the plaintiff, not the defendant, in the third party action. The insurance policy states: "[w]e [Cumberland] will have the right and duty to defend the insured against any suit seeking [damages for bodily injury or property damage]." Under the plain language of the policy, Dale is not entitled to have Cumberland fund its lawsuit against Nesmith.[9]

Additionally, the third party complaint cannot be used to bolster the allegations in the original complaint and thereby trigger Cumberland's duty to defend Dale in Francis's original lawsuit. To use the third party complaint in such a way would violate the rule that "the obligation of a casualty insurance company to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action." Kvaerner, 908 A.2d at 896 (citing Wilson v. Maryland Cas. Co., 105 A.2d at 304, 307 (Pa. 1954) (emphasis in original)); e.g., Colony Ins. Co. v. Peachtree Constr., Ltd., No. 08-135, 2009 WL 3334885, at *4 (N.D. Tex. Oct. 14, 2009) (finding that a third party complaint filed by putative additional insured was extrinsic evidence and therefore irrelevant to the analysis of whether the insurer had a duty to defend); Nat'l Fire Ins. of Hartford v. Walsh Constr. Co., 909 N.E.2d 285, 291-93 (Ill. App. Ct. 2009) (finding that "a putative additional insured could not bolster its claim of coverage by referencing its own third-party complaint.").

---

[9] There is no evidence that Nesmith filed a counterclaim against Dale in the third party action.

### 3. Francis's Complaint Against Nesmith Did Not Trigger Cumberland's Duty to Defend

The final question is whether the second complaint, which was filed by Francis against Nesmith, triggered Cumberland's duty to defend Dale. Although the second complaint sufficiently alleges that the acts or omissions of Nesmith caused Francis's injury, that complaint cannot trigger Cumberland's duty to defend Dale because Dale was not a party to that lawsuit. Further, the allegations in Francis's second complaint cannot trigger Cumberland's duty to defend Dale in Francis's first lawsuit because in determining whether Cumberland had a duty to defend Dale in Francis's first lawsuit I cannot consider anything but the insurance policy and the complaint filed in that lawsuit. See Kvaerner, 908 A.2d at 896-97 ("We find no reason to expand upon the well-reasoned and long-standing rule that an insurer's duty to defend is triggered, if at all, by the factual averments contained in the complaint itself.").

The fact that Francis's first and second lawsuits were consolidated does not compel me to alter my conclusion. Pennsylvania courts have held that "a trial court has three options where pending actions involve either a common question or law or fact or which arise from the same transaction: (1) ordering a joint trial or hearing on any matter at issue; (2) ordering the actions 'consolidated'; and (3) issuing other orders designed to avoid unnecessary costs or delay." See Kincy v. Petro, 2 A.3d 490, 493 (Pa. 2010). Under the first option, the lawsuits are tried together "but each retains its separate character and requires the entry of separate judgment." See id. at 494. Under the second option, which the Pennsylvania Supreme Court described as "complete consolidation," "several actions are combined into one and lose their separate identity

17

and become a single action in which a single judgment is rendered."[10] Id. The Pennsylvania Supreme Court has held that complete consolidation "cannot be achieved unless the actions involve the same parties, subject matter, issues, and defenses." Id. at 495. Because Francis sued different parties in each of his complaints, the consolidation of the two lawsuits could not have been complete consolidation. Instead, as confirmed by the language of the consolidation order itself, the two lawsuits were consolidated for "purposes of discovery and trial." See Docket Sheet, Nos. 070602397 & 060803549, (Phila. Cnty. Ct. of Common Pleas Sep. 27, 2007). Accordingly, each lawsuit retains its own separate character and the allegations in the second complaint cannot be imputed to the first lawsuit–the only one to which Dale was a party–without violating the "eight corners rule." See Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa, 623 F.3d 135, 146 (3d Cir. 2010) (Fuentes, J., concurring) (characterizing as the "eight corners rule" the doctrine that an insurer's duty is to be determined solely by reference to the four corners of the insurance policy and the four corners of the complaint); Kvaerner, 908 A.2d at 896-97.

III. Cumberland Had No Duty To Indemnify Dale

Having found that Cumberland did not have a duty to defend Dale, it follows that Cumberland did not have a duty to indemnify Dale. See id. at 330 n.7 ("[T]he Superior Court has explained that because the duty to defend is broader, a finding that it is not present will also preclude a duty to indemnify . . . . Thus, if [defendant] does not have a duty to defend [plaintiff] in this suit, neither does it have the duty to indemnify.").

---

[10] The third option–"issuing other orders designed to avoid unnecessary costs or delay"–is not relevant to this case.

18

CONCLUSION

I find that Cumberland had neither a duty to defend nor a duty to indemnify Dale.[11] I will therefore grant summary judgment in favor of Cumberland.

An appropriate Order follows.

---

[11] In light of this conclusion, I will deny Dale's motion for summary judgment except insofar as it seeks a declaration that it was an additional insured under Nesmith's insurance policy.